IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHERYL GAINUS, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | No. 3:14-cv-4381-BN |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Cheryl Gainus seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is reversed.

## **Background**

Plaintiff alleges that she is disabled as a result of degenerative joint disease and hip pain. *See* Administrative Record [Dkt. No. 11 ("Tr.")] at 150. After her application for disability insurance was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on December 2, 2013. *See id.* at 46-73. At the time of the hearing, Plaintiff was 58 years old. *See id.* at 128. She is a high school graduate and has past work experience as a hospital private branch exchange ("PBX") operator, administrative specialist, and care giver/foster parent. *See id.* at 166, 171, 179. Plaintiff has not engaged in substantial gainful activity from July 1, 2010, the alleged onset date, through December 31, 2011, the date last insured. *See id.* at 35

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See id.* at 41. Although the medical evidence established that Plaintiff suffered from degenerative joint disease ("DJD") of the right knee, gout, and, obesity, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 35, 37. The ALJ further determined that, through the date last insured, Plaintiff had the residual functional capacity to perform the full range of sedentary work and could return to her past relevant employment as a PBX operator. *See id.* at 38, 40-41.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff contends that the hearing decision is not supported by substantial evidence and results from reversible legal error. More particularly, Plaintiff argues that: (1) the ALJ's determination that Plaintiff has the residual functional capacity to perform sedentary work does not comply with the legal standards set forth in *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), because there is no evidence of work-related limitations; and (2) the ALJ did not follow SSR 82-62 in finding that Plaintiff had past work as a PBX operator and determinating that Plaintiff was capable of performing that past work because there was conflicting evidence about Plaintiff's job duties and no evidence from a vocational expert about the proper classification of the job.

The Court determines that the hearing decision must be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo. See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions

are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is

4

disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive

and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show

6

that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Both of Plaintiff's grounds compel remand, but the Court will address only the first in which Plaintiff contends that substantial evidence does not support the ALJ's residual functional capacity ("RFC") finding. Plaintiff argues that the ALJ allegedly rejected all medical opinions and relied on his lay opinion to determine the RFC, contrary to the legal requirements set forth by the United States Court of Appeals for the Fifth Circuit in *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995). The ALJ found that Plaintiff had the RFC to perform the full range of sedentary work, which means that Plaintiff can occasionally lift/carry ten pounds, frequently lift/carry less than ten pounds, and stand/walk for two hours and sit for six hours in an eight-hour work day without any postural, manipulative, communicative, visual, or environmental limitations. *See* Tr. at 38; 20 C.F.R. § 404.1567(a).

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). RFC refers to the most that a claimant is able to do despite her physical and mental limitations. *See* 20 C.F.R. §§ 404.1545(a); 416.945(a). The RFC is considered by the ALJ, along with the claimant's age, education, and work experience, in determining whether a claimant can work. *See* 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4). Generally, an ALJ should request a medical source statement that describes the types of work a claimant can still perform. *See Ripley*, 67 F.3d at 557. However, the absence of such a statement is not reversible error if the ALJ's decision is nevertheless supported by substantial evidence. *See id.* Reversal is warranted only if the claimant shows that she was prejudiced. *See id.*

In *Ripley*, the ALJ ruled that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. *See id.* The Court of Appeals court noted that the claimant's record contained a vast amount of evidence establishing that he had a back problem but did not clearly establish the effect that condition had on his ability to work. *See id.* The Fifth Circuit therefore remanded with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on is ability to work. *See id.* at 557-58. The Fifth Circuit panel rejected the Commissioner's argument that the medical evidence substantially supported the ALJ's conclusion because the Court of Appeals was unable to determine the effects of the claimant's conditions, "no matter how 'small'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n.27.

Here, the ALJ reviewed Plaintiff's statements in disability and function reports and testimony at the administrative hearing as well the opinions of two State agency medical consultants to determine Plaintiff's RFC. *See* Tr. at 38-40.

8

In his narrative, the ALJ stated that Plaintiff initially alleged disability due to degenerative joint disease and hip pain. *See id.* at 38, 150. At the reconsideration level, she alleged in a disability report that, as of August 2012, her pain had increased, she was experiencing numbness and tingling, and she had received a handicap sticker due to her foot and back pain. *See id.* at 38, 203. She also made new allegations of fatigue, increased stress, and increased agitations, and she reported less sleep, less standing, less housecleaning, less walking, less going on family outings, and staying in the car more when she left the house. *See id.* at 38, 203, 205. In a subsequent disability report, she stated that, as of January 2013, she was unable to wear regular shoes during two gout attacks, and she alleged having more spasms in her left arm, neck pain, pain while walking, and lower back pain. She also reported that it was hard to get out of the bathtub, she could not stand long enough to cook healthy meals or stand in line long, and she had pain shooting up her back when reaching with her left arm. *See id.* at 38-39, 219, 221. The ALJ also stated, without discussion, that, in addition to the disability reports, he considered Plaintiff's allegations in two function reports. *See id.* at 39; *see also id.* at 141-48, 209-16.

The ALJ then discussed Plaintiff's testimony at the administrative hearing. *See id.* at 39. Plaintiff testified that she is no longer as active as she once was. *See id.* at 39, 52. She is right-handed but has trouble using her left hand, and she can only lift until a certain point before she experiences pain. *See id.* at 39, 53. Plaintiff needs help to sit in the tub, has difficulty combing her hair, and is unable to sit for long periods

9

of time due to back pain. *See id.* at 39, 53, 66. She is in constant pain and has to take pain medication, which affects her focus. *See id.* at 39, 55, 71. She cannot use a keyboard, and she used a cane at the hearing because her knee occasionally slips. *See id.* at 39, 55, 56. She has a permanent disability sticker for her car, and her doctor reportedly told her that she needs to have an MRI on her neck and lower back. *See id.* at 39, 56-57. She received hip injections in July 2013 and takes over-the-counter medication for pain. *See id.* at 39, 57-58. She cooks, shops for groceries, and occasionally drives. *See id.* at 39, 56, 58. She cannot lift things easily and only sleeps for three to four hours due to pain. *See id.* at 39, 59-60. Her gout comes and goes, and she has dealt with arm pain, hip pain, and neck pain for two years. *See id.* at 39, 61-62. She stated that she could not do her switchboard operator job because of the long sitting. *See id.* at 39, 55, 70-71.

According to the ALJ, "[t]he objective medical evidence between July 1, 2010, and December 31, 2011, supports a finding that the claimant can do sedentary work." *Id.* at 39. The ALJ "notes that the claimant's gout and DJD of the right knee can reasonably be expected to limit her lifting, carrying, standing, and walking, particularly in combination with her obesity. Therefore, in giving the claimant the benefit of the doubt," the ALJ "finds that the claimant can only lift up to 10 pounds occasionally, less than 10 pounds frequently, and stand and/or walk for 2 hours in an 8-hour workday." *Id.*

Plaintiff contends that those limitations are found nowhere in the record, and, specifically, were not found by any physician. *See West v. Sullivan*, 751 F. Supp. 647, 648 (N.D. Tex. 1990).

The ALJ stated that Plaintiff had not submitted any treating source opinions, and he rejected the opinions of State agency consultants Patty Rowley, M.D. and Laurence Ligon, M.D. *See* Tr. at 40.

Dr. Rowley completed a case assessment form on August 9, 2102, in which she reported that the record lacked sufficient evidence to determine the existence of a medically determinable impairment and recommended that Plaintiff's claim be denied. *See id.* at 263. The ALJ gave no weight to Dr. Rowley's opinion because he found that Plaintiff "is clearly limited by gout, DJD of the right knee and her obesity" and that "Dr. Rowley completed her assessment prior to the completion of the medical record." *Id.* at 40.

Dr. Ligon completed a residual functional capacity report on January 25, 2013. *See id.* at 284-91. Dr. Ligon opined that Plaintiff could occasionally lift twenty pounds or more, could frequently lift and carry ten pounds, and could sit and walk for a total of six hours in an eight-hour workday. *See id.* at 285. The ALJ gave Dr. Ligon's opinion little weight because he found it to be inconsistent with the medical evidence and longitudinal record. "[T]he claimant has significant lifting, carrying, standing, and walking limitations due to her severe impairments of gout, DJD of the right knee, and obesity. However, Dr. Ligon's assessment does not provide any standing or walking

11

limitations in accordance with these impairments," and the ALJ "finds that the claimant is more limited in lifting and carrying than found by Dr. Ligon." *Id.* at 40. But the ALJ did "find Dr. Ligon's assessment concerning a lack of postural, manipulative, visual, communicative, and environmental limitations to be supported by the record." *Id.*

In a situation in which a medical source statement describing the types of work that the applicant is still capable of performing has not been provided, the Court focuses on whether the ALJ's decision is supported by substantial evidence in the existing record. *See Ripley*, 67 F.3d at 557. But the Court of Appeals has reversed a RFC determination where a "record does not clearly [] establish the effect [a plaintiff's] condition had on his ability to work." *Id.* And, while the ALJ may choose to reject medical sources' opinions, he cannot then independently decide the effects of Plaintiff's impairments on her ability to perform work-related activities, as that is prohibited by *Ripley*, 67 F.3d at 557-58, even if the ALJ believes he is simply giving Plaintiff the benefit of the doubt as to what limitations might apply. Rather, at that point, it became incumbent upon the ALJ to obtain an expert medical opinion about the types of work tasks that Plaintiff could still perform given her impairments. *See id.* at 557. The Court therefore "cannot agree that the evidence substantially supports the conclusion that [Plaintiff] was not disabled because [the Court is] unable to determine the effects of [Plaintiff's] conditions ... on [Plaintiff's] ability to perform ... work." *Id.* at 557 n.27; *cf. Williams v. Astrue*, 355 F. App'x 828, 831–32 (5th Cir. 2009) (reversing and remanding

12

where the ALJ rejected the opinions of the claimant's treating physicians and relied on his own medical opinions as to the limitations presented by the claimant's back problems in determining RFC).

Reversal is only warranted, however, if the claimant shows that she was prejudiced by the ALJ's error. Plaintiff argues that she was harmed because a more limited RFC would have prevented her from performing her past work and the analysis would then have proceeded to Step Five, where she would have been found disabled under the Medical-Vocational Guidelines. Plaintiff contends, and the ALJ agreed, that considering her advanced age, reduced sedentary RFC, high school education, and lack of identifiable transferable skills, Rule 201.04 or 201.06 directs a finding of "disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 201.04, 201.05 (2013); *see also* Tr. at 50 (ALJ acknowledges that, if Plaintiff is unable to perform her last job, "she GRIDs out," even if the job was not sedentary).

The prejudice to Plaintiff was exacerbated by the ALJ's failure to obtain testimony from a vocational expert concerning the proper classification of Plaintiff's past work. In her second ground, Plaintiff contends the ALJ erroneously mischaracterized her past employment as a PBX operator, without testimony from a vocational expert and despite conflicting evidence concerning Plaintiff's job duties, and, specifically, whether some of those job duties precluded a finding that the job was sedentary.

Prejudice can also be established by showing that adherence to a ruling might have led to a different decision. *See Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816

(E.D. Tex. 2006) (citing *Newton*, 209 F.3d at 458; *Ripley*, 67 F.3d at 557). And prejudice is demonstrated where the ALJ could have obtained evidence that might have changed the result – specifically, a medical source statement. As such, reversal and remand for further proceedings is required here.

## Conclusion

The hearing decision is reversed, and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[1]

SO ORDERED.

DATED: December 31, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

---

[1] By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled.

14